UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MAZLIN TRADING CORP and SHIREEN
MARITIME LTD.,

                                Petitioners,

      -against-

                                                            Civil Action No. _____

WJ HOLDING LTD, STUBRIK LIMITED, and
YURI DRUKKER,

                                Respondents.
------------------------------------------------------------------X

## VERIFIED PETITION TO RECOGNIZE
## AND ENFORCE FOREIGN ARBITRATION AWARDS

Petitioners Mazlin Trading Corp. ("Mazlin") and Shireen Maritime Ltd. ("Shireen" and collectively, "Petitioners"), by and through its undersigned counsel, submit this Verified Petition to recognize and enforce two related arbitration awards and enter a judgment in conformity with the arbitration awards as follows:

### SUMMARY OF PETITION

1. Petitioners bring this petition pursuant to the United Nations Convention of the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 1957, which was acceded to in the United States on December 29, 1970 ("New York Convention") and is implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 ("FAA"). Specifically, Petitioners seek the Court's authority to recognize and enforce a pair of related arbitration awards ("Awards") from the London Court of International Arbitration ("LCIA") rendered in their favor and against Respondents WJ Holding Ltd. ("WJ Holding") and Stubrick Limited ("Stubrick")

1

(collectively, "Respondents"). Copies of the Awards, both dated January 23, 2018, are attached hereto as **Exhibit 1**.

2. On November 21, 2016, Mazlin and Shireen jointly requested arbitration under the auspices of the LCIA in relation to (i) a written "Revolving Loan Agreement (Secured)" between Mazlin and the Respondents dated August 10, 2012 ("Mazlin Loan Agreement") and (ii) a written "Revolving Loan Agreement (Secured)" between Shireen and the Respondents also dated August 10, 2012 ("Shireen Loan Agreement") (collectively, "Loan Agreements").

3. Although the LCIA found that Mazlin and Shireen could not join their claims into a single arbitral proceeding, and therefore had to proceed separately, the LCIA nonetheless issued identical Awards (except for the quantum of the respective relief), and directed that the monetary relief in both Awards be paid entirely to Mazlin.

4. Petitioners have filed this Petition to secure all the relief granted by the LCIA in the Awards as they are entitled to the same pursuant to each Award. The total amount of the relief granted from the Awards in favor of Petitioners is in the sum of $14,043,387.90, including interest accrued to date.

5. This Petition seeks recognition and enforcement of these foreign arbitral Awards, and the entry of a Judgment, pursuant to the New York Convention and the FAA.

6. This Petition further seeks temporary restraints and preliminary injunctive relief by way of an Order enjoining the Respondents during the pendency of this action as follows:

    a. the proceeds and monies from any successful resolution, whether by way of settlement, award or judgment, of Respondents' action styled *WJ Holding Limited v. Transdniestrian Moldovian Republic et al*, in the United States District Court for the Southern District of New York, Case No.: 19-cv-06260, shall be deposited with a mutually agreeable

independent escrow agent or the proceeds and monies shall be interpleaded with this Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent;

       b.      Respondents may not take any action to transfer, sell, alienate, encumber, hypothecate, or in any other way disperse or dispense of any assets belonging to the Respondents without an order of this Court or written agreement of all parties in this matter; and,

       c.      upon any sale of said assets, Respondents must deposit the proceeds and monies therefrom in full with an independent escrow agent, which proceeds and monies shall not be disbursed without an order of this Court or written agreement of all parties in this matter, or the proceeds and monies shall be interpleaded with this Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent; and

       d.      within three (3) days of the entry of this Order, Respondents shall furnish to Petitioners a list of all assets belonging to Respondents that shall be made subject to this Order.

## THE PARTIES

7. Petitioner Mazlin Trading Corp. ("Mazlin") is a British Virgin Islands company, Company Number 1644425, with its registered office at Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands. Mazlin is the Claimant in LCIA Arbitration No. 163503.

8. Petitioner Shireen Maritime Ltd. ("Shireen") is a Liberian non-resident corporation, registration number C-112456, with its registered office at 80 Broad Street, Monrovia, Republic of Liberia. Shireen is the Claimant in LCIA Arbitration No. 173638.

9. Respondent WJ Holding Ltd is a Cypriot company, registration number HE104090, with its registered office at Pamboridis Building, 45-47 Digenii Akrita Avenue, 1070 Nicosia, Cyprus.

10. Respondent Stubrick Limited is also a Cypriot company, registration number HE268820, located at the same address of WJ Holding.

11. Upon information and belief, Respondent Yuri Drukker is an American citizen.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this Petition pursuant to 9 U.S.C. § 203 which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

13. Venue is proper pursuant to 9 USCA § 204 which provides that "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . ."

14. The jurisdiction and venue of this Court is also proper because, upon information and belief, WJ Holding and Stubrick engage in and conduct business in the City of New York and the State of New York and/or have maintained bank accounts and other property here on a continuing basis. Further, Respondents have recently filed two actions within the State of New York—one in State Court, one in this same Court—seeking the benefits and protections of New York State law and Federal law. As explained in more detail below, both of these cases are directly related to the within matter.

## FACTUAL BACKGROUND

15. The dispute leading up to the Awards arose out of a friendship and business relationship that suddenly fractured as a result of loans that were never repaid.

16. Alex Spiegel, the owner of Mazlin and Shireen, had over the course of 25 years lent approximately $40 million to companies controlled by his longtime friend Yuri Drukker, including WJ Holding and Stubrick. *See* **Exhibit 1**[1], at 30.

17. In or about 2011, Mr. Drukker parted company from his former business partners, after which he was left in sole ownership of WJ Holding, and through it the Bender Oil plant, a vegetable oil production facility in the Transdniestrian region of Moldova. The plant had not been operational for about six (6) years, but Mr. Drukker had plans to revive its production and turn it to profit. He approached Mr. Spiegel to assist with the financing. *See* **Exhibit 1**, at 30-31.

18. To achieve this end, the parties negotiated and executed the Loan Agreements, whereby Mazlin and Shireen would advance funds to WJ Holding and Stubrick in fixed minimum amounts or multiples thereof, to be repaid on dates certain subject to interest that would increase upon late payment. *See* **Exhibit 1**, at 36-37.

19. Clause 1.1 of each loan agreement provides that each loan was made "for the purpose of inventory financing for the edible oil crushing facility," a reference to the Bender Oil plant. *See* **Exhibit 1**, at 36.

20. Clause 9 of each loan agreement provides, in relevant part, as follows:

> Any dispute arising out of or in connection with the definitive agreements shall be referred to and finally resolved by arbitration under the LCIA Rules. The number of arbitrators shall be three. The seat, or legal place, of arbitration shall be London, the United Kingdom. The language to be used in the arbitral proceedings shall be English.

*See* **Exhibit 1**, at 2.

---

[1] Exhibit references are to the Certification of Michael J. Smikun, Esq., in Support of the Brief in Support of Preliminary Injunction filed concurrently with this Petition.

21. Between the months of November 2012 and February 2013, Mazlin lent WJ Holding, pursuant to the Loan Agreements, CHF 1,900,000; Mazlin lent Stubrick, pursuant to the Loan Agreements, $2,850,088.60; and Shireen lent WJ Holding, pursuant to the Loan Agreements, CHF 3,490,500. *See* **Exhibit 1**, at 46.

22. These monies advanced by Mazlin and Shireen to WJ Holding and Stubrick were never paid back, in breach of the Loan Agreements.

23. On November 21, 2016, Mazlin and Shireen jointly requested arbitration under the auspices of the LCIA. WJ Holding and Stubrick took the position that the LCIA lacked jurisdiction to resolve the parties' disputes but, nevertheless, provided a written "Response to Request for Arbitration" and a "Statement of Defense," setting forth both jurisdictional and substantive arguments. *See* **Exhibit 1**, at 46, *passim*.

24. On March 3, 2017, in preparation for LCIA arbitration in London, pursuant to the Loan Agreements, Petitioners obtained a world-wide freezing order/injunction against WJ Holding and Stubrick in the amount of $11,429,776, in the District Court of Nicosia, Cyprus, where both companies maintain their registered offices and hold many assets. *See* **Exhibit 2**.

25. The LCIA scheduled a jurisdiction and merits hearing ("Hearing") for November 28-29, 2017. After refusing to pay for certain required arbitral expenses every time such expenses came due, the legal representatives of Respondents informed the tribunal that they would not attend the Hearing. The Hearing proceeded without them. *See* **Exhibit 1**, at 2, 13-14, 28

26. On January 23, 2018, the LCIA entered the Awards in favor of Mazlin and Shireen and against Respondents. The total amount of the relief granted from both Awards totals $14,043,387.90, including interest accrued to date. *See* **Exhibit 1**, at 78.

27. In addition to rejecting Respondents' arguments that (i) the Loan Agreements were a sham mechanism to give partial effect to a purported equity investment by Mr. Spiegel in the Bender Oil plant; (ii) and, thus, the Loan Agreements were unenforceable; (iii) rendering the LCIA arbitration clause void; (iv) and thereby depriving the LCIA of jurisdiction; the LCIA also found Respondents had taken multiple positions in the arbitration proceeding inconsistent with positions they were simultaneously taking in a pending New York State matter filed soon after the LCIA proceedings began, in which Respondents seek to litigate the same issues involved in the arbitration ("New York State Matter"). The LCIA also made the following observations regarding the Respondents' conduct:

   a. the Respondents had "taken an unreasonable stance on the []joinder issue";
   b. and "then proceeded to conduct themselves in both arbitrations in a manner calculated to cause further inconvenience and expense to the Claimants";
   c. "the Respondents ha[d] consistently sought to procure a dismissal or stay of the[] arbitration proceedings on the basis that the true agreement between the relevant parties is governed by New York law… [But] the Tribunal … rejected that case. The Tribunal consider[ed] that the Respondents' allegations [were] unsustainable, and that their efforts to resist arbitration amount[ed] to forum-shopping";
   d. "Although the Respondents were fully aware of the timetable laid down in the Procedural Orders that had been made in each arbitration, they waited until the last minute before notifying the Tribunal and the Claimants that they did not propose to offer any disclosure";
   e. "For this accumulation of reasons, the Tribunal h[eld] that the Respondents ha[d] conducted the[] proceedings unreasonably, and with the intention of being as obstructive as they c[ould] to the Claimants."

See **Exhibit 1**, at 72-74.

28. To date, the Respondents have not paid any amount pursuant to the Awards and continue to prosecute the New York State Matter.

29. WJ Holding had previously entered into a privatization agreement with the Transdniestrian Moldovian Republic ("2012 Privatization Agreement") regarding the Bender Oil

plant. This agreement was not realized, the privatization license was not issued, and Bender Oil failed in or around 2015. *See* **Exhibit 1**, at 54.

30. WJ Holding blamed the failure of the 2012 Privatization Agreement on the Transdniestrian Moldovian Republic ("TMR") for what it claimed were breaches of the agreement. WJ Holding filed for arbitration with the International Court of Arbitration of the International Chamber of Commerce ("ICC") in Paris, France. On or about June 8, 2018, the ICC awarded WJ Holding approximately $9,807,336 against the TMR. The award was later amended and thereby totaled $12,423,247. *See* **Exhibit 3**.

31. On July 05, 2019, WJ Holding filed a Petition to Enforce the Arbitration Award in its favor against the TMR in this Court. *See* **Exhibit 4**. That action is styled *WJ Holding Limited v. Transdniestrian Moldovian Republic, et al.*, Case 1:19-cv-06260-DAB, and is pending in the District Court of the United States for the Southern District of New York.

## COUNT ONE
### (CONFIRMATION OF THE AWARDS)

32. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

33. Chapter 2 of the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 201-08, which codifies the New York Convention, governs arbitration agreements that arise from a legal relationship, whether contractual or not, which is considered commercial. *Albtelecom SH.A v. UNIFI Communications, Inc.,* 2017 WL 2364365, at *3-4 (S.D.N.Y. May 30, 2017) (quoting 9 U.S.C. § 202). Where "an agreement to arbitrate 'involve[s] parties domiciled or having their principal place of business outside [the United States],' that agreement is governed by the [New York] Convention." *Id*. (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir. 1997).

34. When a party seeks confirmation of an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. None of these provisions is applicable here.

35. "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *BSH Hausgerate GmbH v. Kamhi*, 291 F. Supp. 3d 437, 441 (S.D.N.Y. 2018). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id*. (citations and quotations omitted).

36. The Awards are clearly reasoned based upon the evidence and facts of the case and, therefore, they were properly entered. The New York Convention requires the Court to recognize and enforce the Awards.

37. This Court should therefore confirm the Awards pursuant to the New York Convention and Judgment should be entered in favor of Petitioners and against Respondents in the sum of $14,043,387.90, plus interest accrued through the date of judgment.

## COUNT TWO
### (INJUNCTIVE RELIEF)

38. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

39. Despite the world-wide freezing order/injunction against WJ Holding and Stubrick in the amount of $11,429,776, from the District Court of Nicosia, Cyprus ("Cyprus Injunction"), upon information and belief Respondents have unilaterally and illegally transferred assets subject to the Cyprus Injunction.

40. To protect a future judgment pursuant to this Petition from the Respondents' dissipation of these assets and others held in this State, and for the reasons stated in the memorandum of law and order to show cause accompanying this Petition, Petitioners seek the following temporary restraints and preliminary injunctive relief enjoining Respondents during the pendency of this action as follows:

a. directing that the proceeds and monies from any successful resolution, whether by way of settlement, award or judgment, of Respondents' action styled *WJ Holding Limited v. Transdniestrian Moldovian Republic et al*, in the United States District Court for the Southern District of New York, Case No.: 19-cv-06260, shall be deposited with a mutually agreeable independent escrow agent or the proceeds and monies shall be interpleaded with this Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent;

b. prohibiting Respondents from taking any action to transfer, sell, alienate, encumber, hypothecate, or in any other way disperse or dispense of any assets belonging to the Respondents without an order of this Court or written agreement of all parties in this matter; and,

c. directing that, upon any sale of said assets, Respondents must deposit the proceeds and monies therefrom in full with an independent escrow agent, which proceeds and monies shall not be disbursed without an order of this Court or written agreement of all parties in this matter, or the proceeds and monies shall be interpleaded with this Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent; and

d. directing that, within three (3) days of the entry of this Order, Respondents shall furnish to Petitioners a list of all assets belonging to Respondents that shall be made subject to this Order.

## COUNT THREE
### (TURNOVER OF MONIES)

41. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

42. 28 U.S.C. § 3205 or, alternatively, Federal Rule of Civil Procedure 69, enables a judgment creditor to seek satisfaction of a judgment by proceeding against the judgment debtor or a third person in possession or custody of money or property in which the judgment debtor has an interest. Likewise, pursuant to Federal Rule of Civil Procedure 65, the Court may use New York State Law procedures to secure assets in anticipation of a future judgment. These rules are also applicable where the garnishee is indebted to the judgment debtor.

43. By virtue of the Awards, Petitioners are creditors of WJ Holding and Stubrick and are, for the reasons set forth previously herein, entitled to confirmation of the Awards and the entry of Judgment against WJ Holding and Stubrick in the sum of $14,040,978.50, plus interest accrued through the date of judgment.

44. Upon the entry of such Judgment, Petitioners will become a judgment creditor of WJ Holding and Stubrick.

45. Despite the entry and delivery of the Awards to all parties to the arbitration, including Respondents, no part of the Awards has been paid or satisfied and it is anticipated that Petitioners will experience significant difficulty enforcing any Judgment entered by this Court.

46. Accordingly, this Court should grant turnover of all monies and/or assets maintained by or on behalf of Respondents with any third party financial institution(s) located in the United States, up to and including the full amount of the Judgment that will be entered by this Court, plus applicable interest accrued through the date of judgment.

## COUNT FOUR
### (VIOLATION OF THE NEW YORK UNIFORM FRAUDULENT CONVEYANCE ACT, NY DEBTOR CREDITOR LAW § 276)

47. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

48. In December 2016, shortly after Petitioners filed for arbitration in the LCIA and had moved for the Cyprus injunction, Mr. Drukker took out a mortgage on the only known property owned by Stubrick, a building and adjacent land in Budapest valued at approximately $6 Million, for no commercially viable reason. *See* **Exhibit 5**.

49. Further, various other properties known to belong to either WJ Holding, Stubrick, or Yuri Drukker, in both Budapest and New York City, are either on the market for sale or have already been sold. *Ibid*.

50. For example, in May 2017, 30% of a Budapest-based real estate holding company previously owned entirely by Stubrick was transferred to one of Mr. Drukker's employees, with the remaining 70% being transferred to another WJ Holding associate who used a fake passport to prove his identity for purposes of the sale. This company owned Stubrick's only known asset, a building and adjacent land in Budapest worth approximately $6 million. *Ibid.*

51. Thereafter, the building and adjacent land were sold in April 2019, apparently to the Republic of China. *Ibid*.

52. Multiple other properties in other parts of the world, including the Ukraine and Moldova, are also currently for sale. *Ibid*.

53. Moreover, Respondents requested that their arbitral award against the TMR be deemed transferable to a third party, which request was granted. *See* **Exhibit 3**, at 92-93.

54. By the above-stated actions, Respondents have transferred assets subject to the Awards and any judgment of this Court recognizing and enforcing the Awards so as to render themselves insolvent.

55. By the above-stated actions, Respondents have also transferred assets subject to the Awards and any judgment of this Court recognizing and enforcing the Awards both (a) after the docketing of a judgment and (b) during the pendency of an action which resulted in a money judgment. *Ibid*.

56. By the above-stated actions, Respondents have also transferred assets subject to the Awards and any judgment of this Court recognizing and enforcing the Awards, including real property, at a time that Respondents intend to incur other debts beyond their ability to pay, and such transfers were made without fair consideration and in bad faith, i.e., for the mere purpose of attempting to evade paying debts owed to Petitioners. *Ibid*.

57. As a direct and proximate result of the above-mentioned transfers of assets, Petitioners have and will continue to suffer damages.

## COUNT FIVE
## (CONVERSION)

58. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

59. Petitioners had an immediate right of possession of the monies subject to the Awards.

60. These monies, or the equivalent value in assets that Respondent owned which could be sold to satisfy the Awards, have been or are currently being dissipated through Respondents' fraudulent or otherwise illegal transfers.

61. Respondents have, therefore, exercised unauthorized dominion over the things in question to the exclusion of Petitioners' right to receive them.

62. As a direct and proximate result, Petitioners have and continue to suffer damages.

## COUNT SIX
## (ALTER EGO LIABILITY)

63. Petitioners repeat, reallege, and incorporate by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

64. Yuri Drukker, as the sole owner of WJ Holding and, upon information and belief, Stubrick, exercises complete domination and control over these corporations in respect to the transfers of assets described in paragraphs 49 through 57 above, inclusive.

65. Such dominion and control were used to commit frauds and other wrongs against Petitioners.

66. These frauds and wrongs directly and proximately caused Petitioners damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court issue an Order as follows:

a. recognizing and enforcing the Awards in all respects and entering judgment in favor of Petitioners and against Respondents in the total sum of $14,043,387.90, plus interest accrued through the date of judgment; and

b. directing that the proceeds and monies from any successful resolution, whether by way of settlement, award or judgment, of Respondents action styled *WJ Holding Limited v. Transdniestrian Moldovian Republic et al*, in the United States District Court for the Southern District of New York, Case No.: 19-cv-06260, shall be deposited with a mutually agreeable independent escrow agent or the proceeds and monies shall be interpleaded with this

Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent; and

      c.    prohibiting Respondents from taking any action to transfer, sell, alienate, encumber, hypothecate, or in any other way disperse or dispense of any assets belonging to Respondents without an order of this Court or written agreement of all parties in this matter; and

      d.    directing that, upon any sale of said assets, Respondents must deposit the proceeds and monies therefrom in full with an independent escrow agent, which proceeds and monies shall not be disbursed without an order of this Court or written agreement of all parties in this matter, or the proceeds and monies shall be interpleaded with this Court pursuant to 28 U.S.C. § 1335 if no agreement can be reached as to an independent escrow agent; and

      e.    directing that, within three (3) days of the entry of this Order, Respondents shall furnish to Petitioners a list of all assets belonging to Respondents that shall be made subject to this Order; and

      f.    awarding compensatory, punitive, and special damages in an amount to be determined at trial; and

      g.    granting such other and further relief as the Court deems just and proper.

Date:   August 15, 2019
          Paramus, New Jersey

                                      Respectfully submitted,

                                      **CALLAGY LAW**

                          By:    /S/Michael J. Smikun, Esq.
                                   Michael J. Smikun, Esq.
                                   *Attorneys for Petitioners*

## VERIFICATION

I, Alex Spiegel, of full age, being duly sworn on his oath according to law, deposes and says:

1) I have read the complaint in this matter and know the contents thereof. The allegations of the complaint are true to my personal knowledge.

2) I certify that the allegations contained in the complaint are true to the best of my knowledge and belief and that if they are willfully false, I am subject to punishment.

By: _Alex Spiegel_   Date: 8/14/19
Alex Spiegel

Witnessed By: _____   Date: 8/14/19

KATHERINE CARDONA
MY COMMISSION # GG040546
EXPIRES October 19, 2020