# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
WJ HOLDING LIMITED,

                Petitioner,                Case No.

       - against -

TRANSDNIESTRIAN MOLDOVIAN REPUBLIC,
TRANSNISTRIAN REPUBLICAN BANK and CJSC
TRANSNISTRIAN SBERBANK,

                Respondents.
---------------------------------------------------------------------x

**PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRATION AWARD**

Petitioner WJ Holding Limited ("Petitioner" or "WJ Holding") by and through its undersigned counsel, submits this petition to recognize and enforce an arbitration award and entry of a judgment in conformity with the arbitration award as follows:

**SUMMARY OF PETITION**

1. Petitioner brings this petition pursuant to the United Nations Convention of the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 1957, which was acceded to in the United States on December 29, 1970 ("N.Y. Convention") and implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201. Petitioner seeks to recognize and enforce an International Court of Arbitration of the International Chamber of Commerce ("ICC") Arbitration Award (the "Award") rendered in its favor against Respondent Transdniestrian Moldovan Republic ("Respondent," the "Republic" or the "TMR"). A copy of the Award, dated June 6, 2018, is annexed hereto as **Exhibit A**, and a copy of a modification of the Award by Addendum dated August 30, 2018 is annexed hereto as **Exhibit B**.

1

2.     On February 26, 2016, WJ Holding commenced arbitration before the ICC in Paris, France against the Republic, a region of the Republic of Moldova exercising authority over the area between Modova's border with Ukraine and the Dniester River. The arbitration was held before the ICC in Paris, France pursuant to section 6.2 of the parties' 2003 agreement and section 5.2 of the parties' 2012 agreement.

3.     On June 6, 2018, the ICC issued a 98-page award ordering, *inter alia*, that TMR pay (i) $1,050,000.00 as reimbursement of the purchase price for shares in OSJC Bendery, (ii) $2,768,684.00 as compensation for investments made during the period of 2003-2011, (iii) $5,110,082.00 as compensation for investments made during the period 2012-2014, and (iv) $878,570.00 as a contractual penalty.

4.     The Award was modified by Addendum dated August 30, 2018, which, *inter alia*, increased the award of $5,110,082.00 to $6,025,946.00 as compensation for investments made during the period 2012-2014, and the $878,570.00 award to $2,578,616.00 as the contractual penalty.

5.     Therefore, the total amount of the award assessed against the TMR and in favor of Petitioner is in the sum of $12,423,247.00 (the "Award").

6.      This Petition seeks recognition and enforcement of this foreign arbitral award, and the entry of a Judgment, pursuant to the New York Convention and the FAA.

7.     Further, as described herein, this Petition seeks a declaratory judgment and an Order granting Petitioner turnover of all monies and/or assets maintained by or on behalf of Respondent with Transnistrian Republican Bank and CJSC Transnistrian Sberbank or by Transnistrian Republican Bank and CJSC Transnistrian Sberbank on behalf of Respondent with any third-party financial institution(s) located in the United States, including, but not limited to,

2

Citibank, up to and including the full amount of the Judgment anticipated to be entered by this Court.

## THE PARTIES

8. Petitioner is a Cyprus corporation located at 45 Digenis Akritas, Pamboridis Building, 1070, Nicosia, Cyprus.

9. Petitioner is engaged in the grain trade and vegetable oil production in the Black Sea region of the former USSR and is the remaining holding company of the WJ group of companies, an international group of companies founded by four US citizens, and a well-known regional leader in grain trading and vegetable oils.

10. Petitioner is solely owned by Yuri Drukker.

11. Respondent Transdniestrian Moldovian Republic, sometimes referred to as any of "Transnistrian Moldovian Republic," "Moldavian Republic," "Transnistria" or Pridnestrovian Moldovian Republic" ("Respondent" or "TMR") is a region of the Republic of Moldova that exercises authority over the area between Modova's border with Ukraine and the Dniester River. Its presidency is located at 57 Sverdlova St, 3300 Tiraspol, Moldova.

12. As set forth in its website, respondent Transnistrian Republican Bank ("Transnistrian Bank"), also referred to in English as "Pridnestrovian Republican Bank," "Central Bank," or "Bank of Transnistria," is an entity that is fully owned and operated by the TMR and is, in fact, the state owned Central Bank of the Republic. See **Exhibit C**.

13. Accordingly, upon information and belief, all authorized capital and other property of Transnistrian Bank is state property (i.e., property of the Republic). See **Exhibit C**.

14. Further, according to its website, Transnistrian Bank, as the Central Bank of the Republic, is empowered independently to exercise the authority and right to own, use and

3

dispose of property assigned to or acquired by it on behalf of the Republic and to maintain gold reserves on behalf of the Republic. See **Exhibit C**.

15. Transnistrian Bank, as an organ of the TMR, owns respondent CJSC Transnitrian Sberbank ("CJSC Sberbank"), in whole or in part.[1]

16. As set forth in its website, CJSC Sberbank was chartered in 1993 by Transnistrian Bank and operates on the basis of a general license for banking operators issued by Transnistrian Bank. See **Exhibit D**.

17. Upon information and belief, all U.S. dollars funds held by Respondent, including, but not limited to, customs payments made to its Customs Committee by exporters from and importers to Transnistria, are held in accounts maintained at CJSC Sberbank. See **Exhibit E** (website of customs committee).

18. According to CJSC Sberbank's own website, Citibank N.A. ("Citibank") in New York functions as its intermediary institution in the United States. As such, CJSC Sberbank maintains a correspondent bank account relationship with and/or involving Citibank. See **Exhibit F**.

19. Upon information and belief, Citibank is designated by CJSC Sberbank to manage transfers of U.S. dollars in connection with matters involving Respondent in the United States.

20. Accordingly, upon information and belief, Citibank holds and maintains U.S. funds that are destined for delivery to and receipt by Respondent in its bank accounts held and maintained at CJSC Sberbank.

---

[1] For the purposes of this petition, only Transdniestrian Moldovian Republic will be referred to herein as "Respondent."

4

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this Petition pursuant to 9 U.S.C. § 203 which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

22. Venue is proper pursuant to 9 USCA § 204 which provides that "An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . ."

23. The jurisdiction and venue of this Court is also proper because, upon information and belief, each of the TMR, Transnistrian Bank, and/or CJSC Sberbank Bank has engaged in and conducted business in the City of New York and the State of New York and/or has maintained bank accounts and other property here on a continuing basis.

## FACTUAL BACKGROUND

24. The dispute leading up to the Award arose out of an agreement to acquire one-hundred percent (100%) of the shares in OJSC Bender Seed Crushing Plant, a Transdniestrian company that owned a large industrial facility located in the City of Bender in the TMR (the "Bender Plant"), which was previously owned by the TMR government. The Bender Plant's primary activity is the conversion of seeds and other agricultural products into oil.

25. Petitioner submitted a bid to purchase the Bender Plant from TMR and the bid was accepted in August 2003 and the parties executed a share purchase agreement soon

5

thereafter (the "2003 Agreement"). The parties then signed an additional agreement on March 28, 2012 that modified certain provisions of the 2003 Agreement (the "2012 Agreement").

26. Thereafter, certain disputes arose between the parties.

27. Petitioner submitted its request to arbitrate to the ICC on February 26, 2016. The ICC notified Respondent that it had 30 days to answer on April 7, 2016. No answer was submitted. On July 7, 2016, the ICC fixed Paris as the place of arbitration in accordance with the 2003 Agreement.

28. Sophie Nappert was appointed as an arbitrator upon Petitioner's nomination, while Galina Zukova and Noah Rubbins were appointed directly by the ICC.

29. On August 31, 2016, Respondent's Minister of Economic Development, Mr. Dmitry Boltrushko, confirmed Respondent's intention to participate in the arbitration.

30. Terms of Reference for the arbitration were signed by all parties, including the Republic, in or about October 2016.

31. On May 18, 2017, a hearing was held in Paris, France that was attended by the parties.

32. On October 13, 2017, the parties submitted their closing written submissions, and on November 10, 2017, the proceedings were declared closed.

33. On June 6, 2018, the Panel issued a 98-page award ordering, *inter alia*, Respondent to pay $1,050,000.00 as reimbursement of the purchase price for shares in OSJC Bendery, $2,768,684.00 as compensation for investments made during the period of 2003-2011, $5,110,082.00 as compensation for investments made during the period 2012-2014, and $878,570.00 as a contractual penalty.

34. The Award was modified by Addendum dated August 30, 2018, which, *inter alia*, increased the award of $5,110,082.00 to $6,025,946.00 as compensation for investments made during the period 2012-2014, and the $878,570.00 to $2,578,616.00 as the contractual penalty.

35. The total amount of the Award, therefore, is $12,423,247.00.

## COUNT I.
## (CONFIRMATION OF THE AWARD)

36. Petitioner repeats, realleges and incorporates by reference each and every allegation in all preceding paragraphs as if fully set forth herein

37. "Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08, which codifies the New York Convention, governs arbitration agreements that arise from a 'legal relationship, whether contractual or not, which is considered commercial,' except when those relationships are 'entirely between citizens of the United States' and are otherwise domestic in nature." *Albtelecom SH.A v. UNIFI Communications, Inc.*, 2017 WL 2364365, at *3-4 (S.D.N.Y. May 30, 2017) (*quoting*, 9 U.S.C. § 202). Where "an agreement to arbitrate 'involve[s] parties domiciled or having their principal place of business outside [the United States],' that agreement is governed by the [New York] Convention." *Albtelecom,* 2017 WL 2364365, at *3-4 (*quoting, Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir. 1997).

38. When a party seeks confirmation of an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). Under the Convention, a court may refuse to recognize an award only under circumstances where:

7

(a) The parties to the agreement ... were ... under some incapacity, or the said agreement is not valid under the law ...; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings ...; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration ...; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties ...; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

*BSH Hausgerate GmbH v. Kamhi*, 291 F. Supp. 3d 437, 440 (S.D.N.Y. 2018) (*quoting*, Convention art. V(1)) (alterations in original).

39. "Enforcement may also be refused if '[t]he subject matter of the difference is not capable of settlement by arbitration,' or if 'recognition or enforcement of the award would be contrary to the public policy' of the country in which enforcement or recognition is sought." *BSH Hausgerate GmbH v. Kamhi*, 291 F. Supp. 3d 437, 440 (S.D.N.Y. 2018) (*quoting*, Convention art. V(2) (alterations in original).

40. "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, *supra*, 403 F3d at 90. "The burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Id.* (citations and quotations omitted).

41. "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *BSH Hausgerate GmbH v. Kamhi*, *supra*, 291 F. Supp. 3d at 441 (citations and quotations

omitted). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (citations and quotations omitted).

42. The Award is clearly reasoned based upon the evidence and facts of the case and, therefore, it was properly entered. The New York Convention requires the Court to recognize and enforce the Award unless Respondent can meet its very heavy burden to demonstrate one of the above-enumerated grounds for not recognizing the Award.

43. Respondent cannot meet this heavy burden.

44. This Court should confirm the Award pursuant to the New York Convention and Judgment should be entered in favor of Petitioner and against Respondent in the sum of $12,423,247.00, plus interest.

## COUNT II.
## (DECLARATORY JUDGMENT)

45. Petitioner repeats, realleges and incorporates by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

46. As described herein, respondents Transnistrian Bank and CJSC Sberbank were established by and state owned by the TMR and exercise authority and right to maintain, own, use and dispose of property assigned to or acquired on behalf of the TMR.

47. As such, each is an organ and/or instrumentality of the TMR, including in connection with the maintenance of assets in the United States and, therefore, stand in the shoes of the TMR with respect to its financial dealings in the United States.

48. Citibank in New York functions as the intermediary institution in the United States for CJSC Sberbank and, among other things, has been designated by CJSC Sberbank to manage transfers of U.S. dollars in connection with matters involving Respondent in the United States.

9

49. By virtue of Transnistrian Bank and CJSC Sberbank functioning as mere instrumentalities of Respondent, Petitioner has the right and should be permitted to enforce any Judgment entered in its favor and against Respondent against each of Transnistrian Bank and CJSC Sberbank and to reach assets held by them on behalf of Respondent in an amount up to and including the sum of $12,423,247.00, plus interest, including without limitation, any assets or correspondent accounts held by Citibank.

### COUNT III.
### (TURNOVER)

50. Petitioner repeats, realleges and incorporates by reference each and every allegation in all preceding paragraphs as if fully set forth herein**.**

51. CPLR 5225(b) enables a judgment creditor to seek satisfaction of a judgment by proceeding against a third person in possession or custody of money or property in which the judgment debtor has an interest. A related provision, CPLR 5227, is applicable where the garnishee is indebted to the judgment debtor.

52. By virtue of the Award, Petitioner is a creditor of TRM and is, for the reasons set forth previously herein, entitled to confirmation of the Award and the entry of Judgment against TMR in the sum of $12,423,247.00, plus interest.

53. Upon the entry of such Judgment, Petitioner will become a judgment creditor of TMR.

54. Despite the entry and delivery of the Award to all parties to the arbitration, including TMR, no part of the Award has been paid or satisfied and it is anticipated that Petitioner will experience significant difficulty enforcing any Judgment entered by this Court.

55. Upon information and belief, respondents Transnistrian Bank and CJSC Sberbank, jointly and/or severally, hold and/or maintain monies and/or other assets of TMR in the United

States, whether in their respective capacities or with any third-party financial institution(s) located in the United States, including, but not limited to, Citibank.

56. Additionally, Transnistrian Bank and CJSC Sberbank are themselves owed by TRM, and are therefore assets of the debtor.

57. Accordingly, pursuant to CPLR 5225 and 5227, this Court should grant turnover of all monies and/or assets maintained by or on behalf of Respondent with Transnistrian Bank and CJSC Sberbank or by Respondent, Transnistrian Bank and CJSC Sberbank with any third-party financial institution(s) located in the United States, including, but not limited to, Citibank, and additionally, order turnover of the shares or membership interests in Transnistrian Bank and CJSC Sberbank or any sums owed to Transnistrian Bank and CJSC Sberbank, up to and including the full amount of the Judgment that will be entered by this Court, plus applicable interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that, pursuant to the New York Convention and FAA, this Court issue an Order:

(a) recognizing and enforcing the Award in all respects and entering judgment in favor of Petitioner and against Respondent in the total sum of $12,423,247.00, plus interest;

(b) declaring and adjudging that Petitioner has the right and should be permitted to enforce the Judgment entered in its favor and against each of Transnistrian Bank and CJSC Sberbank and to reach assets held by them in the United States on behalf of Respondent in an amount up to and including the sum of $12,423,247.00, plus interest;

(c) granting Petitioner an order of turnover against Transnistrian Bank and CJSC Sberbank with respect to monies and assets belonging to Respondent that are

maintained by them or on their behalf by Citibank or any other third-party bank or other financial institution located in the United States up to and including the full amount of the Judgment, plus applicable interest; and

(d) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 2, 2019

                LAW OFFICE OF JEFFREY FLEISCHMANN PC

                By: ___/s/ Jeffrey Fleischmann, Esq.___
                   Jeffrey Fleischmann, Esq.
                150 Broadway, Suite 900
                New York, New York 10038
                Phone: (646) 657-9623
                Fax: (646) 351-0694
                Email: jf@lawjf.com
                *Attorneys for Petitioner WJ Holding Limited*