UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MAZLIN TRADING CORP. and SHIREEN
MARITIME LTD.,

        Petitioners,

   -v-                                                      No.  19 CV 7652-LTS

WJ HOLDING LTD., STRUBRICK
LIMITED, and YURI DRUKKER,

        Respondents.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Petitioners Mazlin Trading Corp. ("Mazlin") and Shireen Maritime Ltd. ("Shireen" and collectively, the "Petitioners") have filed a petition (docket entry no. 1, the "Petition"), pursuant to the United Nations Convention of the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 1957, which was acceded to in the United States on December 29, 1970 (the "New York Convention") and is implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. section 201, to confirm and enforce a pair of related arbitration awards (the "Awards") issued by the London Court of International Arbitration ("LCIA") rendered in their favor against Respondents WJ Holding Ltd. and Strubrick Limited (collectively, the "Entity Respondents").  Petitioners further seek temporary restraints and preliminary injunctive relief, asserting, in addition to a claim for confirmation of the Awards, state law claims for injunctive relief, turnover of monies, violation of the New York Uniform Fraudulent Conveyance Act, NY Debtor Creditor Law section 276, conversion, and alter ego liability against the Entity Respondents and Respondent Yuri Drukker ("Mr. Drukker"

and collectively, "Respondents). (See Petition ¶¶ 38-66). Respondents move to dismiss the Petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to stay merits discovery pending the Court's decision on the motion to dismiss; their motion also provides notice of application of foreign law pursuant to Fed. R. Civ. P. 44.1. (See docket entry no. 47, the "Motion.") The Petitioners oppose the motion, and have filed a cross-motion to confirm the Awards. (See docket entry no. 49, the "Opp.").

The Court has original jurisdiction of Petitioners' Petition to confirm the Awards pursuant to 9 U.S.C. section 203, and supplemental jurisdiction of the Petitioners' state law claims pursuant to 28 U.S.C. section 1367. The Court has reviewed thoroughly all of the parties' submissions in this action. For the following reasons, Respondents' motion to dismiss the Petition is granted, Petitioners' cross-motion to confirm the Awards is denied as moot, and Respondents' motion to stay merits discovery is also denied as moot.

BACKGROUND

The following facts are taken as true for the purposes of the instant motion practice. The dispute surrounding the underlying action stems from a series of agreements executed in 2012 between Mr. Drukker, on behalf of the Entity Respondents, and Petitioners relating to an investment in a vegetable oil factory located in the Transdniestrian region of Moldova (the "Loan Agreements"), under which Respondents received millions of dollars from the Petitioners. (Petition at ¶¶ 17-21; Motion at 2; Opp. at 5.) The parties dispute, inter alia, whether the investment was intended to be in the form of loans or convertible notes. (Motion at 2.) In November 2016, Petitioners requested arbitration under the LCIA (the "LCIA Arbitration") pursuant to an arbitration provision included in both Loan Agreements against the Entity Respondents as a result of their failure to pay back monies allegedly due under the Loan Agreements. (Petition at ¶ 23; Motion at 2; Opp. at 5.) The Entity Respondents argued that the

LCIA lacked jurisdiction to resolve the parties' disputes, and, after participating in the preliminary stages of the LCIA Arbitration, did not participate in the arbitration trial.  (Petition at ¶ 23; Opp. at 6).  The LCIA scheduled the trial on the parties' jurisdiction and merits claims in November 2017, and entered the Awards in favor of Petitioners against Entity Respondents on January 23, 2018, in the amount of $14,043,387.90, including interest accrued to that date.  (Petition at ¶ 26.)  Mr. Drukker was not a party to the Awards.

The Kings County Action

On April 7, 2017, less than a year before the conclusion of the LCIA Arbitration, the Entity Respondents filed an action in Kings County Supreme Court (the "Kings County Action") against Petitioners, among others, seeking a declaratory judgment and permanent injunction "declaring that the Loan Agreements are . . . not binding or enforceable" and "enjoining [Petitioners] from attempting to enforce the Loan Agreements."  (Motion at 3 (citing docket entry no. 48, "Elenowitz-Hess Dec." at Ex. 1 at ¶¶ 26-35).)  In May 2017, Petitioners filed a motion to dismiss the Kings County Action, which was denied in March 2018.  (Motion at 3 (citing Elenowitz-Hess Dec. at Ex. 2 and 3).)  Thereafter, Petitioners filed an answer, which included a counterclaim for a breach of contract, and an amended answer, after receiving leave from the court, which included a counterclaim for confirmation of the LCIA Awards.  (Motion at 3-4 (citing Elenowitz-Hess Dec. at Ex. 2 at docket entry nos. 49 and 67).)  The parties engaged in discovery in the Kings County Action before Petitioners removed the Kings County Action to the United States District Court of the Southern District of New York in August 2019.  (Motion at 4 (citing Elenowitz-Hess Dec. at Ex. 2 at docket entry nos. 69, 72, and 74 and Ex. 5).)  Prior to removal, Entity Respondents filed an amended complaint, which included, inter alia, a claim for

a declaratory judgment that the Entity Respondents "are not liable for any debts or interest under the Loan Agreements." (Motion at 4 (citing Elenowitz-Hess Dec. at Ex. 1-A at ¶ 183.)

On February 11, 2020, the Southern District of New York remanded the Kings County Action to state court pursuant to the parties' stipulation. (See docket entry no. 50, the "Resp. Reply" at 1.) Two days later, Petitioners removed the Kings County Action to the United States District Court for the Eastern District of New York.[1] Respondents filed a motion to remand the case back from the Eastern District to state court on procedural grounds and for lack of subject matter jurisdiction.[2] In December 2020, the Eastern District granted the Respondents' motion and remanded the case to state court due to lack of subject matter jurisdiction.[3] Accordingly, the Kings County Action is now currently proceeding in New York state court.[4]

The Florida Action

On April 2, 2018, nearly a year before Petitioners asserted their confirmation counterclaim in the Kings County Action and while the Kings County Action was still pending, Petitioner Mazlin commenced an action against Respondents, among others, in Florida state court, seeking confirmation of the Awards and alleging other state law claims (the "Florida Action"). (Motion at 4 (citing Elenowitz-Hess Dec. at Ex. 7).) After both parties filed discovery

---

[1] See WJ Holding Limited et al v. Shireen Maritime LTD et al, 20-CV-01068 (docket entry no. 1.) The Court takes judicial notice of the filings occurring after the briefing of this motion in this case to establish the facts of such litigation and related filings. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).
[2] See WJ Holding Limited et al v. Shireen Maritime LTD et al, 20-CV-01068 (docket entry nos. 12 and 23).
[3] Id. at docket entry nos. 30-32.
[4] See WJ Holding and Strubrick Limited v. Shireen Maritime LTD et al., Index No. 0506949/2017 (N.Y. Sup. Ct. 2017). The Court takes judicial notice of the filings occurring after the briefing of this motion in this case to establish the facts of such litigation and related filings. See Kramer, 937 F.2d at 774.

requests and the Respondents filed a motion to dismiss, the parties agreed on October 23, 2018, to an order abating the Florida Action pending final resolution of the Kings County Action. (Motion at 4-5 (citing Elenowitz-Hess Dec. at Exs. 8-9).)

DISCUSSION

Respondents move to dismiss the Petition, pursuant to Federal Rule of Civil Procedure 12(b)(1) by abstaining from exercising subject matter jurisdiction, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, Respondents argue that the Court should dismiss Petitioners' claims for confirmation of the Awards pursuant to the doctrine of abstention articulated by the United States Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ("Colorado River abstention"), because this action is parallel to the pending state court actions in Kings County and Florida, and subsequently decline to exercise supplemental jurisdiction over Petitioners' remaining state law claims.

"The [Colorado River] abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's duty to exercise its jurisdiction." Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir.2001) (quoting Colorado River, 424 U.S. at 813). Courts may apply the abstention doctrine in limited "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." Colorado River, 424 U.S. at 817. The principles underlying the Colorado River abstention doctrine are premised on the conservation of federal judicial resources in those "exceptional circumstances[ ] where the resolution of existing concurrent state-court litigation could result in comprehensive disposition of litigation." Woodford, 239 F.3d at 522 (internal quotation marks omitted). "A motion to dismiss based on the abstention doctrine is also

considered as a motion made pursuant to [Federal Rule of Civil Procedure] 12(b)(1)." City of New York v. Milhelm Attea & Bros., Inc., 550 F.Supp.2d 332, 341–42 (E.D.N.Y. 2008).

"Pursuant to Colorado River abstention, a district court may stay or dismiss a party's claims only where (1) the relevant state and federal actions are 'parallel' and (2) an evaluation of a six-factor test weighs in favor of abstention." First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012). "The circumstances permitting dismissal are extremely limited, and the balance [must be] heavily weighted in favor of the exercise of jurisdiction." DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011) (internal quotation marks omitted). "The Court's task is not to find some substantial reason for the exercise of jurisdiction; rather, the task is to ascertain whether there exists [sic] exceptional circumstances, the clearest of justifications, that can suffice under Colorado River to justify the surrender of that jurisdiction." Id. (internal quotations marks and emphasis omitted).

In determining the threshold question in a Colorado River abstention analysis as to whether the state and federal actions at issue are parallel, the Court may consider whether the two actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested. See Hous. Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 417 (S.D.N.Y. 1999). Actions are considered "parallel" if "substantially the same parties are contemporaneously litigating substantially the same issue" in both forums. Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). "Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." GBA Contracting Corp. v. Fid. & Deposit Co., No. 00–CV–1333, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 3, 2001); see also Machat v. Sklar, No. 96 CIV. 3796 SS, 1997 WL 599384,

at *7 (S.D.N.Y. Sept. 29, 1997) ("The claims and remedies need not be identical to support abstention . . . What matters is that the claims concern the same events [ ] and involve sufficient overlap of subject matter.") (internal citations omitted).  Further, "if the claims raised in the federal proceeding 'could be satisfactorily adjudicated in [the state] proceeding,' abstention may be warranted." Machat, 1997 WL 599384, at *7; see also Stone v. Patchett, No. 08–CV–5171, 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009) (There must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case" to justify abstention.) (internal quotation marks and emphasis omitted)

      Here, the Kings County and Florida Actions are sufficiently parallel to the instant action to satisfy the threshold inquiry in a Colorado River abstention analysis.  The Kings County Action was commenced by the Entity Respondents against Petitioners, among others, seeking a declaratory judgment and permanent injunction declaring that the Loan Agreements are not binding or enforceable, and enjoining the Petitioners from attempting to enforce the Loan Agreements to collect debts. The Florida Action was commenced by Petitioner Mazlin against the Entity Respondents, among others, for confirmation of the same Awards that Petitioners seek to confirm here, and to pursue various other state law claims.  There is an overlap of the parties involved in the instant action and the relevant state actions, with additional parties involved in the state actions.  All three actions concern the enforceability of the Loan Agreements, and all three actions also require adjudication of either the Petitioners' counterclaim or of petitions to confirm the Awards at issue here.  Indeed, as Respondents explain, "if Respondents are successful in the previously filed Kings County Action, that court would 'permanently enjoin [Petitioners] from attempting to collect . . . any debt under the Loan Agreement.' . . . such a finding would, in fact, moot this action."  (Resp. Reply at 4.)  Therefore, in light of the overlap

of the parties and congruence of the subject matter underlying the state court and instant actions, and the state courts' authority to both confirm the Awards that Petitioners seek to enforce and adjudicate Petitioners' state law claims asserted in the instant action, the Court finds that the instant action is parallel with the Kings County and Florida Actions.  See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n, 328 F. Supp. 3d 141, 151 (S.D.N.Y. 2018) (stating that courts may "measure[e] parallelism by reference to multiple [pending] state suits") (internal quotation marks and citation omitted) (collecting cases).

Having found the threshold inquiry concerning parallelism of the relevant actions satisfied, the Court turns next to an examination of whether abstention is warranted under the six-factor test articulated by the Supreme Court in Colorado River.  In conducting this assessment, courts consider the following factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100–01 (2d Cir. 2012).  "The Supreme Court has explained that none of these factors alone is necessarily determinative, but, instead, a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  Id. (internal quotations and citation omitted).  Moreover, where a certain factor is facially neutral, that "is a basis for retaining jurisdiction, not for yielding it."  Woodford, 239 F.3d at 522.

The first two factors at issue—whether the actions involve a res over which one of the courts has assumed jurisdiction and the convenience of the federal forum for certain parties—are facially neutral here. This is not an in rem action, and there is no res at issue in either the state court litigations or the instant action, and both parties concede that the federal forum is equally convenient for all parties as would be New York state court. Therefore, in light of their neutrality, the first two factors favor the Court's retaining jurisdiction of the instant action.

The Court next considers the third factor, evaluating the risk of piecemeal litigation. The Supreme Court has stated that "the most important factor in [its] decision to approve the dismissal [in Colorado River] was the 'clear federal policy ... [of] avoidance of piecemeal adjudication . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983) (citation omitted). Although the risk of duplicative litigation is not a determinative factor in a Colorado River abstention analysis, the Second Circuit has noted that that "[m]aintaining virtually identical suits [arising out of the same set of facts] in two forums . . . would waste judicial resources and invite duplicative effort . . . [A]voidance of piecemeal litigation is best served by leaving these suits in the state court." Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985). In Woodford, the Court of Appeals also explained that "the primary context in which [it has] affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." 239 F.3d at 524. The Court of Appeals explained that "[t]he classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." Id. (finding Colorado River abstention was not warranted because, in part, no risk of inconsistency

could arise with respect to plaintiffs' lawsuits where plaintiffs brought claims for intentional infliction of emotional distress and other theories in state court and Title VII and ADEA claims in federal court against employer for supervisor's alleged discriminatory acts).

Here, there is an unnecessary risk of piecemeal litigation because simultaneous adjudication of the Kings County Action, the Florida Action, and the instant action may result in inconsistent outcomes that cannot be cured under the principles of res judicata and collateral estoppel.  The issues being pressed in the Kings County Action, i.e., whether or not the Loan Agreements are enforceable and whether or not the Entity Respondents here are entitled to a declaratory judgment against enforcement of the Loan Agreements, are directly contrary to the Petitioners' claim for a confirmation award in both the instant action and the Florida Action.  If the Kings County Action were to be resolved in favor of the Entity Respondents and this Court were to simultaneously confirm the Petitioners' Awards, Petitioners would be permanently enjoined from attempting to collect any debt under the Loan Agreements by one court and found entitled to collect that same debt by another.  Such outcomes would not only result in inconsistent and competing judgments, but also require further litigation to resolve the enforceability of the Loan Agreements and Awards at issue.  On the other hand, if this Court were to abstain from deciding Petitioners' petition to confirm the Awards and allow the Kings County Action to proceed, the Entity Respondents and Petitioners, along with the other parties involved in that action, will inevitably receive one uncontroverted judgment declaring whether or not the Loan Agreements are enforceable, and, if so, whether or not the Awards are entitled to confirmation.  Abstention here would not only be a wise and efficient conservation of judicial resources, but it would also allow for the most efficient resolution for all parties involved in the

underlying dispute surrounding the Loan Agreements here. For these reasons, consideration of the third factor, i.e., the risk of piecemeal litigation, weighs in favor of abstention.

The fourth factor calls for the Court's consideration of the order in which the parallel actions were filed, and whether one action is more advanced than another. Abstention is favored where, as here, the relevant state court actions were "filed first and [are] further along than the federal action." Buhannic v. Schroeder, No. 18-CV-10170, 2019 WL 4735378, at *6 (S.D.N.Y. Sept. 27, 2019). "This factor does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 21). Here, both the Kings County and Florida Actions were filed first, in 2017 and 2018, respectively, before the instant action was commenced in late 2019. There has been extensive motion practice in the Kings County Action—including a decision on Petitioners' motion to dismiss—a pending motion to dismiss in the Florida Action, the exchange of discovery demands in both actions, and exchange of discovery in the Kings County Action. These litigation activities occurred prior to abatement of the Florida Action and before the Petitioners removed the Kings County Action to federal court for the first time.

Petitioners argue that the Kings County Action is not substantively progressing because, at the time the instant motion was being briefed, Petitioners had already removed the case to the Southern District, and then proceeded to remove it to the Eastern District after it was remanded. However, after the motion was fully briefed, the Kings County Action was remanded back to state court from the Eastern District in December 2020, and Petitioners thereafter filed a second motion to dismiss in the Kings County Action, which is currently being briefed. See WJ Holding and Strubrick Limited v. Shireen Maritime LTD et al., Index No. 0506949/2017 (N.Y.

Sup. Ct. 2017) (docket entry nos. 83-90).  The New York state court's procedural posture indicates significant advancement in the Kings County Action as compared to the instant case, in which the Petitioners had merely filed their Petition before the instant motion to dismiss practice ensued.  Regardless of the advancement of the Florida Action, the Kings County Action has progressed far enough to consider the fourth factor as weighing in favor of deference to the state court in adjudicating the issues before it and not risking an inconsistent judgment from this Court.  See Colorado River, 424 U.S. at 820 (explaining that the absence of any proceedings in federal court other than the filing of the complaint prior to the motion to dismiss favored dismissal of the federal suit).  For this reason, the fourth factor weighs in favor of abstention as well.

The fifth factor considers the governing law at issue, and whether state or federal law provides the rule of decision on the merits.  "When the applicable substantive law is federal, abstention is disfavored, though the inverse proposition will not alone support a surrender of federal jurisdiction."  De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir. 1989).  Where "the governing state law involves 'a novel state law theory,' a stronger argument may be made for abstention."  Id.  Nevertheless, "[a]lthough the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . parties.'"  Gen. Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 82 (2d Cir. 1988) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 23 n. 29).  Here, Petitioners have indicated their intention to seek confirmation of the Awards in both federal court and the state court actions in New York and Florida, and have asserted state law claims and counterclaims in each of these actions as well.  Under the New York Convention, the state and federal courts equally have jurisdiction to

confirm the Awards at issue here. See 9 U.S.C. section 205.[5] However, adjudication of Petitioners' state law claims asserted in the instant action in favor of the Petitioners would directly affect the rights of not only the parties to this lawsuit, but also the additional parties to the Kings County Action, who are in the midst of litigating the enforceability of the Loan Agreements at issue, and some of whom, like Mr. Drukker, were not parties to the LCIA arbitration. Such a judgment from this Court would defeat the principles of comity and efficiency, and has the potential to create more litigation than necessary across multiple forums. Therefore, while there are neither federal laws nor novel state law theories at issue in either the instant action or the relevant state actions, the fact that the "bulk of litigation" involved concerns state law claims affecting the rights several parties, some of whom are not present in this case, favors abstention here.

The final Colorado River factor calls for the Court's consideration of whether the state procedures are adequate to protect the Petitioners' federal rights. In making this determination, the Court must decide if "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone Mem'l Hosp., 460 U.S. at 28. As mentioned above, the Petitioners are not advancing any claims in the instant action that are specific to their federal rights. To the extent they are

---

[5] In arguing that federal law provides the exclusive rule of decision here, Petitioners appear to confuse the concepts of original decision with exclusive jurisdiction and use the terms interchangeably in advancing their arguments. Rather, state and federal courts have concurrent jurisdiction to confirm arbitration awards under the New York Convention. See 9 U.S.C. section 205. Nevertheless, Petitioners' advancement of a similar petition to confirm the Awards in the Florida Action and addition of a counterclaim in the Kings County Action concedes their agreement that both federal and state courts have jurisdiction to confirm foreign arbitral awards under the New York Convention and the FAA.

advancing additional state law claims they have not already asserted in the Kings County or Florida Actions, Petitioners' have "not identified any conceivable jeopardy or prejudice to their rights should their claims be decided by the [state] court[s] rather than this court." First Keystone Consultants, Inc., 862 F. Supp. 2d at 170.  To the contrary, Petitioners have demonstrated their confidence in the state courts' abilities to adjudicate Petitioners' claims thoroughly and fairly, as evidenced by Mazlin's commencement of an action to confirm the Awards in Florida state court and Petitioners' filing of counterclaims, including for breach of contract and to confirm the Awards, in the Kings County Action.  For these reasons, the Court has no reason to doubt that the state court actions "will adequately protect [Petitioners'] procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims."  Id. at 194.  Therefore, the sixth factor also weighs in favor of abstention here.

In addition to the six Colorado River factors, courts conducting an abstention analysis have also found "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River."  Moses H. Cone Mem'l Hosp., 460 U.S. at 17 n. 20.  For example, the Second Circuit has found abstention to be "appropriate where the same party was the plaintiff in both the state and federal actions, and the plaintiff had filed the federal action after suffering some failures in the earlier action." First Keystone Consultants, Inc., 862 F. Supp. 2d at 194 (citing Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985)).  Similarly, here, Petitioners commenced the instant action after filing a petition in the Florida Action seeking to confirm the Awards, agreeing to abate the Florida Action before a decision on Respondents' motion to dismiss was rendered, and then asserting a counterclaim in the Kings County Action seeking the same relief sought in the Florida Action.  The instant action was commenced after

the Petitioners lost on their motion to dismiss the Kings County Action, and also after they removed the state court action to federal court in the Southern Eastern District Court of New York without renewing their confirmation counterclaim or seeking to combine the instant action with the federal action.  Petitioners' actions raise a question as to their motive behind commencing the instant action, and whether it is an attempt at forum shopping after agreeing to a stay in the Florida Action and before potentially losing on the merits in the Kings County Action.  Indeed, "[s]uch willingness to commence and dismiss lawsuits for strategic purposes is vexatious, increases the risk of piecemeal litigation, and wastes the resources of this court and others . . ."  First Keystone Consultants, 862 F. Supp. 2d at 195.

For the foregoing reasons, the Court finds that extraordinary circumstances exist demonstrating that Colorado River abstention is appropriate in this case.  The issues central to the Kings County Action, the Florida Action and the instant action concern the enforceability of the Loan Agreements between the parties, and therefore Petitioners' entitlement to collect debt under the Loan Agreements and to confirmation of the Awards.  While the first two Colorado River factors are facially neutral and therefore weigh in favor of retaining jurisdiction, the remaining four factors tip in favor of abstention because the risk of piecemeal litigation is present; the state actions were filed first and the Kings County action is more advanced than the instant action; the "bulk of litigation" involved requires adjudication of state law claims affecting the rights of numerous parties not present here; and, as both parties have conceded, state procedures are more than adequate to protect the Petitioners' rights.  Moreover, the Petitioners' filing of multiple lawsuits in multiple venues seeking the same relief—that is, confirmation of the Awards, among other state law claims—signals to the Court that abstention is appropriate to

prevent forum shopping. For these reasons, the Court exercises its discretion to abstain from deciding the Petition pursuant to Colorado River and dismisses the action.

## CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss the petition for confirmation of the arbitration awards is granted pursuant to Federal Rule of Civil Procedure 12(b)(1), Petitioners' cross-motion to confirm the arbitration awards is denied as moot, and the Court declines to exercise supplemental jurisdiction over Petitioners' remaining state law claims. Respondents' motion to stay discovery pending a decision on the motion to dismiss is hereby denied as moot.

This Memorandum Opinion and Order resolves docket entry no. 46. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: New York, New York
       March 26, 2021

                                                  /s/ Laura Taylor Swain
                                                LAURA TAYLOR SWAIN
                                                United States District Judge